Vickie KUEHL, Plaintiff,

v.

WAL–MART STORES, INC. and Sam's Wholesale Club, Defendants.

Civ. A. No. 95–S–393.

United States District Court,
D. Colorado.

Nov. 14, 1995.

Robert A. Garcin, Burton, Busch & Garcin, Loveland, CO, for Plaintiff.

Kirk R. McCormick, James J. Murphy, Harris, Karstaedt, Jamison & Powers, P.C., Colorado Springs, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the court on the Defendants' Motion for Summary Judgment, filed September 1, 1995. The court has reviewed the motion, the Plaintiff's brief in opposition, the exhibits and affidavits, the deposition excerpts, the entire case file, and the applicable law and is fully advised in the premises. The court has determined that oral argument would not materially assist resolution of this matter.

This is a civil action for declaratory and monetary relief brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the ADA) and purportedly pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* Plaintiff, diagnosed with chronic tibula tendinitis, was employed as a door greeter at Sam's Wholesale Club in Loveland, Colorado. During the course of the Plaintiff's employment, her diagnosed medical problems resulted in some missed time from work, a claim for worker's compensation benefits, and a lump sum payment for 5% permanent partial disability. During the course of the Plaintiff's medical treatment, she worked reduced hours at Sam's Club and was allowed to take breaks every two hours, unlike other employees. (Exhibit 2 pp. 36–42 to Defendants' Motion for Summary Judgment). Upon her release to return to work with certain restrictions, the Plaintiff sought permission to sit on a stool while on duty as a door greeter. Although Wal–Mart offered the Plaintiff two other options of working a split shift or working as a cashier in the tire mounting department, Wal–Mart felt that a door greeter should not be seen sitting down on the job and declined to permit the Plaintiff to use a stool. The Plaintiff claims in her First and only Claim for Relief that Wal–Mart discriminated against her in violation of the ADA because she was not provided with a stool to sit on while working her shift as a door greeter.

### 1. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991).

The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). The movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553; *John Hancock Mut. Life Ins. Co. v. Weisman,* 27 F.3d 500, 503 (10th Cir.1994); *Universal Money Ctrs., Inc. v. AT & T,* 22 F.3d 1527, 1529 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). If the moving party meets this burden, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991); *Applied Genetics Int'l. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). A "material" fact is one that might affect the outcome of the suit under the governing law. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-

movant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■■■ In applying the summary judgment standard, the court construes the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Blue Circle Cement, Inc. v. Board of County Comm'rs.,* 27 F.3d 1499, 1503 (10th Cir.1994); *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). However, the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *FDIC v. Hulsey,* 22 F.3d 1472, 1481 (10th Cir.1994) (emphasis in original). To constitute a genuine factual dispute, there must be more than a scintilla of evidence; summary judgment may be granted if the evidence is merely colorable or is not significantly probative. *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) (citation omitted). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir.1993), *quoting Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

*2. Analysis*

The ADA provides that "[N]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■■■ To qualify under the ADA, the Plaintiff must establish: (1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified; that is, with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability. *White v. York Intl. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995), *citing Mason v. Frank,* 32 F.3d 315, 318–19 (8th Cir. 1994); *Tyndall v. National Educ. Ctrs.,* 31 F.3d 209, 212 (4th Cir.1994); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994); *Gilbert v. Frank,* 949 F.2d 637, 640–42 (2d Cir.1991); *Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990). Congress intended relevant caselaw developed under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., to be generally applicable to analogous inquiries under the ADA. *White,* 45 F.3d at 360 n. 5; *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). Also useful in ADA actions are the regulations the Equal Employment Opportunity Commission has issued to implement the ADA (EEOC regulations), 29 C.F.R. Part 1630, and the EEOC Compliance Manual Section 902: Definition of the Term "Disability" (EEOC Manual). *See* 42 U.S.C. § 12116, § 12206(c)(3); *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987) (treating Rehabilitation Act regulations promulgated by the Department of Health and Human Services as "'an important source of guidance on the meaning of § 504 [of the Rehabilitation Act]'", *quoting Alexander v. Choate,* 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985)).

1. The Plaintiff must first establish that she is a disabled person within the meaning of the ADA. "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The ADA does not define "major life activities." The court is guided by the definition

found in the EEOC regulations and the EEOC Manual. 29 C.F.R. Part 1630; Compliance Manual Section 902; *see* 42 U.S.C. § 12116, § 12206(c)(3). The EEOC regulations adopt the definition of "major life activities" found in the Rehabilitation Act regulations, 34 C.F.R. § 104. *See* 29 C.F.R. Part 1630, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(i) Major Life Activities. The term means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); Compliance Manual Section 902.3(b).

■ The Plaintiff does not contend that she is substantially limited in any major life activity other than working. To demonstrate that an impairment "substantially limits" the major life activity of working, an individual must show significant restriction in the ability to perform a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities. 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added); Compliance Manual Section 902.4(c)(3)(i). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id.* The Tenth Circuit adopted a similar standard in *Welsh v. City of Tulsa*, wherein it stated that while the Rehabilitation Act regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice. 977 F.2d 1415, 1417 (10th Cir.1992). An impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Rehabilitation Act. *Welsh*, 977 F.2d at 1419.

Three factors "should be considered" when determining whether an impairment substantially limits a major life activity, 29 C.F.R. § 1630.2(j)(2), and three additional factors "may be considered" when determining whether an impairment substantially limits the major life activity of working, 29 C.F.R. § 1630.2(j)(3)(ii). The three factors that "should be considered" when determining whether an impairment substantially limits a major life activity are:

(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment, and (iii) the permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). The three additional factors that "may be considered" when an individual claims substantial limitation in the major life activity of working are:

(A) the geographical area to which the individual has reasonable access;

(B) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). See also *Welsh* 977 F.2d at 1419, *quoting Jasany v. United States Postal Service*, 755 F.2d 1244, 1249 (6th Cir.1985).

■ The court concludes that summary judgment should be entered against the Plaintiff because she fails to produce any evidence relevant to any of the factors that should be used in evaluating whether an impairment substantially limits her employment potential. In fact, the evidence before the court demonstrates that the Plaintiff's doctors certified her as able to continue work with the specific restrictions that she limit standing to no more than five hours per shift with 15–minute breaks every two hours. (Exhibits 2 pp. 39–42 and 4 pp. 4–5 to Defendants' Motion for Summary Judgment). There is no evidence that the Plaintiff had any other medical restrictions. The evidence before the court demonstrates that the Plaintiff's impairment limited only her ability to perform this one particular job as a door

greeter. The Plaintiff's inability to return to her particular job as a door greeter without some accommodation does not demonstrate a substantial limitation in the major life activity of working. *Bolton*, 36 F.3d at 943, citing *Welsh*, 977 F.2d at 1417–19 and 29 C.F.R. § 1630.2(j)(3)(i). The Plaintiff did not have an impairment that precluded her from performing any other job or duty within a class of jobs. Because the Plaintiff fails to produce evidence showing a significant restriction in her ability to perform either a class of jobs or a broad range of jobs in various classes, she does not meet the definition of a disabled person under the ADA and the Defendants are entitled to summary judgment on her ADA claim.

2. Even if the court assumes that the Plaintiff has established the first element of her ADA claim, the Plaintiff must next show that she is qualified under the ADA, that is, with or without reasonable accommodation, she is able to perform the essential functions of the job.

 First, the court must determine whether the Plaintiff could perform the essential functions of her job, i.e., functions that bear more than a marginal relationship to the job at issue. *White*, 45 F.3d at 361, citing *Chandler*, 2 F.3d at 1393–94; *Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17; *Gilbert*, 949 F.2d at 641; *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991). Second, if (but only if) the court concludes that the Plaintiff is not able to perform the essential functions of her job, the court must determine whether any reasonable accommodation by the employer would enable her to perform those functions. *White*, 45 F.3d at 361–62 (citations omitted).

 *a.* The court's first task in applying this analysis is to define the "essential functions" of the job at issues in this case. *White*, 45 F.3d at 362. The term "essential functions" is defined by the EEOC regulations as "the fundamental job duties of the employment position the individual with a disability holds" and "does not include the marginal functions of the position." 29

C.F.R. § 1630.2(n)(1). Deciding whether specific job duties are essential job functions requires courts to engage in fact-specific inquiries. *Hall v. U.S. Postal Service*, 857 F.2d 1073, 1079 (6th Cir.1983). The court must first consider whether the Plaintiff has demonstrated a genuine issue of fact regarding her ability to perform the essential functions of her job without reasonable accommodation.

The evidence indicates that the most significant part of the job of a door greeter is to check membership cards as customers enter the store. (Affidavit of Vickie Kuehl, Deposition Testimony of Julie Johnson, attachments to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment). Wal–Mart argues that the ability to stand for a full shift is an essential function of the job of a door greeter. (Affidavit of Sandra Majowicz, Director of Personnel, Sam's Wholesale Club, Loveland, Colorado, Exhibit 6 to Defendants' Motion for Summary Judgment). Wal–Mart wants its door greeters to act in an "aggressively hospitable" manner. *Id.* Door greeters need to be mobile in order to do the job of monitoring the large entryway, greeting customers, checking membership cards, placing stickers on return items, giving directions, etc. (Deposition Testimony of Julie Johnson, attachments to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment). Wal–Mart does not believe that a door greeter sitting on a stool would convey the desired image or would be able to adequately greet the customers.

 The Plaintiff challenges Wal–Mart's contention that standing is an essential function of a door greeter's job. The Plaintiff's evidence consists of her own conclusory allegations that standing for long periods of time is not necessary to the job of a door greeter. The only other evidence tendered by the Plaintiff on this issue is her counsel's affidavit that he has seen a door greeter at the Loveland store "stand in one place for at least 45 minutes without moving." [1]

---

**1.** The question of whether an attorney is competent to testify is committed to the discretion of the district court, subject to normal review for

abuse. *United States v. Fogel*, 901 F.2d 23, 26 (4th Cir.) (citation omitted), *cert. denied*, 498 U.S. 939 (1990). Although some courts have permit-

The ADA provides that the employer's definition is persuasive in determining the essential functions of a job. 42 U.S.C. § 12111(8) ("consideration shall be given to the employer's judgment as to what functions of a job are essential"). The court concludes that the Plaintiff's and her counsel's disagreement with Wal–Mart's definition of the essential functions of a door greeter is not sufficient to carry the Plaintiff's burden on summary judgment that she is qualified without reasonable accommodation to perform the essential functions of the job.

b. Next, the court must determine whether the Plaintiff has demonstrated a genuine issue of fact regarding her ability to perform the essential functions of the job with reasonable accommodation. *Hogue v. MQS Inspection, Inc.*, 875 F.Supp. 714, 721 (D.Colo.1995) (citation omitted).

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; ..." 42 U.S.C. § 12112(b)(5)(A). The ADA does not define "reasonable accommodation." However, the term may include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials, or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B); *See also* 29 C.F.R. § 1630.2(o)(2)(ii). The EEOC regulations define the term "reasonable accommodation" to mean, *inter alia*:

> [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.

29 C.F.R. § 1630.2(o)(ii).

Once the Plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the employer to present evidence of its inability to accommodate. *White*, 45 F.3d at 361, *citing Mason*, 32 F.3d at 318; *Barth*, 2 F.3d at 1187; *Gilbert*, 949 F.2d at 642. If the employer presents such evidence, the Plaintiff may not simply rest on her pleadings. As with discrimination cases generally, the Plaintiff at all times bears the ultimate burden of persuading the trier of fact that she has been the victim of illegal discrimination based on her disability. *White* 45 F.3d at 361, *citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ————, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993); *Tyndall*, 31 F.3d at 213; *Barth*, 2 F.3d at 1186; *Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1385 (10th Cir.1981); *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994).

The determination that a reasonable accommodation is not possible is, like the related essential function determination, highly fact specific. *Hall*, 857 F.2d at 1079. Courts must consider whether any "reasonable accommodation" by the employer would enable the disabled person to perform the essential functions. *Id.* (citation omitted). "However, the ADA does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker." *White* 45 F.3d at 362, citing 29 C.F.R. § 1630.2(o) and *Chiari*, 920 F.2d at 319. Likewise, "[t]he ADA does not require employers to modify the actual duties of a job in order to make an accommodation for individ-

---

ted lawyers to testify on behalf of clients, the practice has been regularly criticized. *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1267 (6th Cir.1983) (citations omitted). Courts have generally frowned on such testimony as a violation of Disciplinary Rule 5–102(A) of the Ameri-

can Bar Association's Code of Professional Responsibility. *Fogel*, 901 F.2d at 26. It is beyond question that counsel should avoid appearing both as advocate and witness except under special circumstances. *United States v. Morris*, 714 F.2d 669, 671 (7th Cir.1983) (citations omitted).

uals who are not physically capable of performing them." *Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995); *Cheatwood v. Roanoke Industries,* 891 F.Supp. 1528, 1537 (D.Ala.1995). "[T]he duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position." *Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995).

██ The entire basis of the Plaintiff's claim is that Wal–Mart did not provide her with the single acceptable accommodation of a stool to sit on as needed during the course of her shift as a door greeter. (Deposition Testimony of Vickie Kuehl p. 36, Exhibit 2 to Defendants' Motion for Summary Judgment). The evidence shows that Wal–Mart offered the Plaintiff two accommodations as alternatives to providing her with a stool. First, Wal–Mart offered to let her work a split shift that consisted of working four hours in the morning, having several hours off in the middle of the day, and working three more hours later in the afternoon. This split shift alternative was compatible with the medical restrictions placed on the Plaintiff by her doctors. (Exhibit 2 pp. 55–57 and Exhibit 5 to Defendants' Motion for Summary Judgment). Wal–Mart also offered the Plaintiff a job as a cashier in the tire mounting department, which would have allowed her to sit down periodically. (Deposition Testimony of Vickie Kuehl pp. 45–49; Exhibit 5 to Defendants' Motion for Summary Judgment). The Plaintiff rejected both of these alternative accommodations and continued to insist on accommodation in the form of a stool to use while on duty as a door greeter. The accommodations offered by Wal–Mart were consistent with the ADA's definition of acceptable reasonable accommodations. 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(*o*).

██ "[T]he purpose of an antidiscrimination act is not to provide those traditionally discriminated against with preferential treatment but rather with treatment equal to that accorded to others." *Robinson v. City of Friendswood,* 890 F.Supp. 616, 620 (D.Tex. 1995), *citing Wimberly v. Labor and Industrial Relations Commission of Missouri,* 479

U.S. 511, 107 S.Ct. 821, 93 L.Ed.2d 909 (1987). "The ADA does not require that an employer provide the best accommodation possible to a disabled employee." *Eckles v. Consolidated Rail Corp.,* 890 F.Supp. 1391, 1399 (D.Ind.1995). "Nor is an employer required to accommodate a disabled employee in exactly the way he or she requests." *Id.* "The employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." 29 C.F.R. Part 1630, Appendix, § 1630.9.

Furthermore,

A qualified individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept. However, if such individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position, the individual will not be considered a qualified individual with a disability.

29 C.F.R. § 1630.9(d). Although normally the determination of whether an offer of accommodation by an employer is reasonable is a question of fact, "[w]here the nature of the accommodation offered by an employer is undisputed and no reasonable jury could find the offered accommodation to be unreasonable, however, summary judgment is appropriate." *Kerno v. Sandoz Pharmaceuticals Corporation,* 1994 WL 511289, *7 (N.D.Ill. Sept. 13, 1994) (citation omitted). The court concludes that the reasonableness of Wal–Mart's alternative accommodations has not been seriously challenged by the Plaintiff's evidence. The Plaintiff, by rejecting two reasonable alternative accommodations, has lost any status she may have had under the ADA as a qualified individual with a disability. In light of the evidence, a reasonable jury could not find the offered accommodations unreasonable and summary judgment is appropriate. The court concludes that the Plaintiff has not demonstrated that she is qualified under the ADA. She has not shown that, with or without reasonable accommoda-

tion, she is able to perform the essential functions of her job.

c. Because the Plaintiff has not established either of the first two elements of an ADA claim, the court concludes that she cannot establish the third element that the Defendants terminated her because of her disability.

3. The Plaintiff, by the report of her expert witness, Lucinda A. Castellano, Esq., and citing 29 C.F.R. § 1630.9, maintains that Wal–Mart's failure to utilize "an interactive problem-solving approach" and the "critical lack of communication" "potentially" violated the ADA.[2] (Lucinda A. Castellano, Esq., *Report on Reasonable Accommodation Procedures On Behalf of Vickie Kuehl*, attachment to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment). First, the Plaintiff misconstrues an EEOC recommendation as a statutory requirement. Second, the interactive process is triggered only if the employee is "qualified." The term "qualified" is defined to include the concept of reasonable accommodation. *White*, 45 F.3d at 363. "Thus, the employer necessarily must make a threshold determination that the disabled employee may be accommodated, and is, therefore, qualified within the meaning of the ADA. It is at that point, the regulations recommend, that the employer and employee work together in order to identify how best to accommodate the employee." *White*, 45 F.3d at 363. Here, the Defendants did not violate the ADA for failure to engage in an "interactive problem-solving approach" with the Plaintiff.

4. The court notes that there is no virtue in pleading superfluous claims for relief when the law provides a well-established and straightforward remedy. "Indeed, the practice is inimical to the interests of the litigants...." *Price v. Federal Express Corp.*, 660 F.Supp. 1388, 1395 (D.Colo.1987). Al-

though the Plaintiff's complaint mentions Title VII, the allegations in the complaint reveal that this is a case under the ADA. There are no allegations in the complaint that address a Title VII claim. The First Claim for Relief based on the ADA includes the appropriate remedies contemplated by established law. The complaint fails to state a claim upon which relief can be granted under Title VII and there is absolutely no evidence before the court in support of a Title VII claim. Accordingly, the Plaintiff's purported Title VII claim is dismissed.

In conclusion, IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment is GRANTED.

2. Summary judgment shall enter on the complaint in favor of the Defendants and against the Plaintiff.

3. The Defendants shall be entitled to their costs upon submission of a bill of costs to the Clerk of the Court within ten days of the date of this Order.

4. This civil action is dismissed.

---

**2.** Fed.R.Evid. 704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact. However, an expert may not state legal conclusions drawn by applying the law to the facts. *Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir.1992) (citation omitted); *A.E. By and Through Evans v. Independent School Dist. No. 25*

*of Adair County, Oklahoma*, 936 F.2d 472, 476 (10th Cir.1991) (citations omitted); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir.1988) (citations omitted), cert. denied, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). Here, the Plaintiff improperly uses her expert witness' report to offer an opinion on the ultimate issue of law that the Defendants violated the ADA.